# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARL S. VINCENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-14262** |
| **KEITH COOLEY, WARDEN** | **SECTION "B"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Earl S. Vincent III, is incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2] On June 9, 2009, Vincent was charged by bill of information in

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 7.

Orleans Parish with the unauthorized use of a motor vehicle.[3]  The Louisiana Fourth

Circuit Court of Appeal summarized the facts determined at trial in relevant part as

follows:

> On 27 April 2009, Officer John Blatcher and then police recruit and
> now police officer, Matthew Henderson, responded to a call relating to a stolen
> vehicle.  They met the victim at the intersection of St. Claude Avenue and
> Lizardi Street in New Orleans, and learned that while the victim was making
> a delivery, his delivery van was stolen.  A short while later, as Officer Blatcher
> was questioning the victim, the victim noticed his van parked across the street
> from its original parking place.  Officer Blatcher and Officer Henderson drove
> their vehicle over to the parked van.  As they approached the van, Vincent
> jumped from the van and fled on St. Claude Avenue, but not before Officer
> Blatcher got a good look at him.  Officer Henderson broadcast the suspect's
> flight and the fact that the suspect was clothed in black and wearing a blue and
> orange baseball cap.  As Vincent fled through the neighborhood, he lost his
> cap in a yard on Egania Street.  Officer Blatcher identified in court the cap,
> jeans, and shirt that Vincent wore on the day of incident.  The clothing was
> subsequently logged into Central Evidence and Property by Officers
> Henderson and Blatcher.  Although Officer Blatcher did not apprehend
> Vincent, he positively identified the defendant at a show up as the man he saw
> flee the van.
>                                 [. . .]
> Officer Terrell Seibert testified that he assisted in investigating the case.
> On the day of the incident he relocated to the area of Lizardi Street and St.
> Claude Avenue where he spoke with Officer Henderson, who advised that the
> suspect may be in the 1000 block of Lizardi.  As he and his partner drove in
> the area, they were flagged down by an Entergy employee, who told them that
> the suspect was in the area.  Upon further investigation, Officer Seibert located
> the shirtless suspect sitting on the front porch of 1025 Lizardi Street.  Officer
> Seibert ordered the suspect from the porch and notified other units that he had
> a suspect who might be the person being sought.  The other police units
> relocated to Officer Seibert's location and received a positive identification on
> him from Detective Sinegar, who had pursued the defendant on foot.  At that
> point, Officer Seibert took Vincent into custody.  Officer Seibert identified
> Vincent in court as the person he took into custody.

---

[3]St. Rec. Vol. 3 of 9, Bill of Information, 6/9/09.

[. . .]

Larry Class, the victim, testified that he worked two jobs, one of which was delivering Krispy Kreme donuts in a Chevrolet Astro van. On 27 April 2009, while in the service center on St. Claude Avenue, someone drove off with his van. He had been required to leave his van running to prevent the sugar on the donuts from running. When he realized his van was missing, Mr. Class called 911. As Mr. Class spoke with investigating officers, he noticed his van parked across the street from the service center. He approached the van and noticed a man seated in the driver's seat. He reached into the van and turned off the ignition. At that point, the suspect jumped from the van and ran. Mr. Class identified Vincent in court as the man he saw seated in his van. He further verified that he did not give Vincent permission to be in his van.

[. . .]

State v. Vincent, 56 So.3d 408, 410-12 (La. App. 4th Cir. 2011); State Record Volume 5 of 9, Louisiana Fourth Circuit Court of Appeal Opinion, 2010-KA-0764, pages 1-5, January 19, 2011.

Vincent was tried before a jury on October 14 and 19, 2009, and found guilty of the lesser offense of attempted unauthorized use of a vehicle.[4] At a December 16, 2009, hearing, the state trial court denied Vincent's motions for new trial and post-verdict judgment of acquittal.[5] The court adjudicated Vincent a fourth felony offender and sentenced him to twenty (20) years in prison at hard labor without benefit of parole,

---

[4]St. Rec. Vol. 1 of 9, Trial Minutes, 10/14/09; Trial Minutes, 10/19/09; St. Rec. Vol. 4 of 9, Trial Transcript, 10/14/09; St. Rec. Vol. 5 of 9, Trial Transcript, 10/19/09.

[5]St. Rec. Vol. 1 of 9, Multiple Bill Sentencing Minutes, 12/16/09; St. Rec. Vol. 3 of 9, Motion for New Trial, 12/16/09; Motion for Post-Verdict Judgment of Acquittal (undated); St. Rec. Vol. 5 of 9, Multiple Bill Hearing Transcript, 12/16/09.

probation or suspension of sentence.[6] The court also denied Vincent's motion to reconsider the sentence.[7]

On direct appeal to the Louisiana Fourth Circuit, Vincent's appointed counsel asserted three errors:[8] (1) The state trial court erred by rejecting a defense objection and not ordering a mistrial when the State interjected race into its closing arguments in response to the defense's misidentification argument. (2) The State's use of the multiple bill process voided the jury's verdict and was not properly filed and proven beyond a reasonable doubt. (3) The trial court imposed an unconstitutionally excessive sentence. On January 19, 2011, the Louisiana Fourth Circuit affirmed the conviction and multiple offender sentence. The court held that the first claim was not preserved for appeal and was otherwise meritless and found no merit in the second and third claims.[9]

The Louisiana Supreme Court denied Vincent's related writ application without stated reasons on June 17, 2011.[10] His conviction became final ninety (90) days later on

---

[6]St. Rec. Vol. 1 of 9, Multiple Bill Sentencing Minutes, 12/16/09; St. Rec. Vol. 5 of 9, Multiple Bill Hearing Transcript, 12/16/09.

[7]St. Rec. Vol. 1 of 9, Multiple Bill Sentencing Minutes, 12/16/09; St. Rec. Vol. 3 of 9, Trial Court Order, 12/16/09; Motion to Reconsider Sentence, 12/17/09; St. Rec. Vol. 5 of 9, Multiple Bill Hearing Transcript, 12/16/09.

[8]St. Rec. Vol. 4 of 9, Appeal Brief, 2010-KA-0764, 6/21/10.

[9]Vincent, 56 So.3d at 408; St. Rec. Vol. 5 of 9, 4th Cir. Opinion, 2010-KA-0764, 1/19/11.

[10]State v. Vincent, 63 So.3d 1038 (La. 2011); St. Rec. Vol. 7 of 9, La. S. Ct. Order, 2011-KO-0315, 6/17/11; La. S. Ct. Writ Application, 11-KO-0315, 2/15/11 (dated 2/3/11); St. Rec. Vol. 5 of 9, La. S. Ct. Letter, 2011-KO-315, 2/15/11.

September 15, 2011, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

More than one year later, on October 11, 2012 and December 13, 2012, Vincent through retained counsel filed identical motions for new trial based on "new evidence" that Crandon Barrett, a juvenile charged in the crime with Vincent, could have testified that he did not know Vincent and that the person actually involved in the crime was Matthew Roche.[11] The state trial court denied the motion on December 14, 2012, finding that the information was not new or newly discovered under Louisiana law, because Vincent and his trial counsel knew about Barrett and attempted to locate him before trial.[12] The Louisiana Fourth Circuit and the Louisiana Supreme Court denied Vincent's related pro se writ applications without further comment.[13]

---

[11]St. Rec. Vol. 3 of 9, Motion for New Trial, filed 10/11/12 per docket master entry and 12/13/12 per minute entry; St. Rec. Vol. 1 of 9, Docket Master Entry, 10/11/12; Minute Entry, 12/13/12.

[12]St. Rec. Vol. 3 of 9, Trial Court Judgment, 12/14/12; St. Rec. Vol. 1 of 9, Minute Entry, 12/14/12.

[13]State ex rel. Vincent v. State, 118 So.3d 1112 (La. 2013); St. Rec. Vol. 7 of 9, La. S. Ct. Order, 2013-KH-0330, 7/31/13; La. S. Ct. Writ Application, 13-KH-330, 2/13/13 (cover letter dated 2/5/13); St. Rec. Vol. 3 of 9, La. S. Ct. Letter, 2013-KH-330, 2/13/13; St. Rec. Vol. 6 of 9, 4th Cir. Order, 2013-K-0044, 1/30/13; 4th Cir. Writ Application, 2013-K-0044, 1/11/13 (date 1/7/13).

On January 10, 2013, Vincent signed and submitted an application for post-conviction relief to the state trial court asserting four grounds for relief:[14] (1) He received ineffective assistance of counsel when his trial counsel failed to investigate to locate Barrett before trial. (2) His confrontation rights were violated when the State introduced hearsay, testimonial statements without calling the Entergy worker who gave information to police. (3) He was denied effective assistance of counsel when his appellate counsel failed to assign the hearsay/denial of confrontation rights claim on appeal. (4) He was denied effective assistance of counsel when his trial counsel offered him misleading advice regarding the State's offer of a sentence of 80 months in prison as a second offender.

After receiving additional briefing, the state trial court denied relief on Claim No. 2 under La. Code Crim. P. art. 930.4(C), because Vincent was aware of the claim and failed to present it on appeal.[15] At a November 7, 2014, evidentiary hearing, the state trial court denied relief on Vincent's ineffective assistance of counsel claims.[16]

---

[14]St. Rec. Vol. 3 of 9, Application for Post-Conviction Relief, 1/16/13 (dated 1/10/13); Brief in Support, 1/16/13; Affidavit, 1/10/13; Supplemental Brief, dated 5/19/13.

[15]St. Rec. Vol. 3 of 9, Minute Entry, 3/14/14; State's Response, 11/20/13; Traverse, dated 11/24/13. In the meantime, the Louisiana Fourth Circuit granted Vincent's application for writ of mandamus and directed the state trial court to address Vincent's application for post-conviction relief. St. Rec. Vol. 8 of 9, 4th Cir. Order, 2013-K-1472, 11/5/13; 4th Cir. Writ Application, 2013-K-1472, 10/29/13 (dated 10/9/13).

[16]St. Rec. Vol. 1 of 9, Minute Entry, 11/7/14; St. Rec. Vol. 8 of 9, Hearing Transcript, 11/7/14.

On March 17, 2015, the Louisiana Fourth Circuit denied Vincent's pro se and counsel-filed writ applications finding no error in the trial court's ruling.[17] The Louisiana Supreme Court denied Vincent's related writ application under Strickland v. Washington, 466 U.S. 668 (1984), on February 19, 2016.[18]

II.    FEDERAL HABEAS PETITION

On March 11, 2016, the clerk of the United States District Court for the Western District of Louisiana received Vincent's federal habeas corpus petition, and on August 30, 2016, the case was transferred to this court.[19]   On September 16, 2016, after correction of certain deficiencies, the clerk of this court filed Vincent's federal habeas petition in which he asserts that he was denied effective assistance of counsel when trial counsel failed to locate or conduct a thorough investigation to attempt sufficiently to locate Crandon Barrett before trial.[20]   Vincent concedes that his petition is not timely filed.  He contends, however, that his claim is based on a factual predicate that could not have been discovered with due diligence and should be excused under Martinez v. Ryan,

---

[17]St. Rec. Vol. 8 of 9, 4th Cir. Order, 2015-K-0173 c/w 2015-K-0154, 3/17/15; 4th Cir. Writ Application, 2015-K-0173, 2/10/15 (dated 1/6/15); 4th Cir. Writ Application, 2015-K-0154, 2/11/15.

[18]State ex rel. Vincent v. State, 184 So.3d 678 (La. 2016); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2015-KH-0806, 2/19/16; La. S. Ct. Writ Application, 15-KH-806, 4/23/15 (dated 4/17/15); St. Rec. Vol. 3 of 9, La. S. Ct. Letter, 2015-KH-0806, 4/23/15.

[19]Rec. Doc. Nos. 1 (deficient petition), 4 (transfer order).

[20]Rec. Doc. No. 7, p.5.

566 U.S. 1 (2012).[21] He further argues that the discovery of the new factual predicate on January 10, 2013, the day he obtained Barrett's affidavit as evidence to support his claim of ineffective assistance, renders his petition timely under 28 U.S.C. § 2244(d)(1)(D).

The State filed a response in opposition to the petition, asserting that the petition was not timely filed, and Vincent is not entitled to a deferred filing period because the factual predicate was known to him before he obtained the affidavit.[22]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Vincent's petition, which, for reasons discussed below, is deemed filed in federal court on March 8, 2016.[24]  The threshold questions in habeas review under the

---

[21]Rec. Doc. No. 7 at p.13, 7-2 at pp. 10-11.

[22]Rec. Doc. No. 17.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184

amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Vincent's federal petition was not timely filed. The record supports this conclusion. For the following reasons, Vincent's petition must be dismissed with prejudice as time-barred.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires that a Section 2254 petition must ordinarily be filed within one year of the date conviction became final or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[25] Duncan v. Walker, 533 U.S. 167, 179-80 (2001); McQuiggin v. Perkins, 133

---

F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Western District initially received and filed Vincent's deficient petition on March 11, 2016, when it was received. The corrected petition was docketed in this court on September 16, 2016, and the case was opened on October 13, 2016, when the filing fee was paid after denial of pauper status. Vincent dated the signature on his original, deficient petition on March 8, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

[25]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.        the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

S. Ct. 1924, 1929 (2013). Vincent has <u>not</u> established his entitlement to rely on the alternative, later trigger to the AEDPA's one-year filing period.

Vincent argues that his untimely assertion of his claim of ineffective assistance of his trial counsel should be excused because he did not obtain Barrett's affidavit until January 10, 2013, which should be the date on which his federal statute of limitations filing period commences. The AEDPA does <u>not</u> delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays it only until the date on which it "<u>could have</u> <u>been</u> discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D) (emphasis added); <u>see</u> <u>Manning v. Epps</u>, 688 F.3d 177, 189-90 (5th Cir. 2012) (finding argument that § 2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); <u>Owens v. Boyd</u>, 235 F.3d 356, 359 (7th Cir. 2000) ("... the time commences when the factual predicate 'could have been discovered through the exercise of due diligence', not when it was actually discovered by a given prisoner ... [and] ... not when

---

B.      the date on which the impediment to filing an application created by State action
        in violation of the Constitution or laws of the United States is removed, if the
        applicant was prevented from filing by such State actions;
C.      the date on which the constitutional right asserted was initially recognized by the
        Supreme Court, if the right has been newly recognized by the Supreme Court
        and made retroactively applicable to cases on collateral review; or
D.      the date on which the factual predicate of the claim or claims presented could
        have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this subsection.

the prisoner recognizes their legal significance.").  The Fifth Circuit has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim."  In re Young, No. 14-51288, 2015 WL 3649765, at *9 (5th Cir. June 8, 2015) (citing Flanagan, 154 F.3d at 199).

Neither the Supreme Court nor the Fifth Circuit has specifically defined "due diligence" in the context of Section 2244(d)(1)(D).  Other provisions of the AEDPA found in both Section 2244 and Section 2254 contain similar due diligence language that has been addressed by the federal courts.  In Johnson v. Dretke, 442 F.3d. 901, 908 (5th Cir. 2006), the Fifth Circuit considered whether a petitioner's Brady claim could be asserted in a successive petition under Section 2244(b)(2), and found that ". . . due diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record.  The burden to make such a showing, of course, remains the petitioner's."  As to an evidentiary hearing under Section 2254(e)(2), the Supreme Court concluded that "[d]iligence . . . depends upon whether the [petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . .."  Williams v. Taylor, 529 U.S. 420, 435 (2000).

In connection with collateral review of a federal conviction, 28 U.S.C. § 2255(f)(4) contains language identical to Section 2244(d)(1) and provides that the period of limitation may begin from "the date on which the facts supporting the claim or claims

presented could have been discovered through the exercise of due diligence." In <u>Anjulo-</u><u>Lopez v. United States</u>, 541 F.3d 814, 818 (8th Cir. 2008), the Eighth Circuit determined that this provision did not require the maximum feasible diligence, only the reasonable diligence due under the circumstances, and, while due diligence does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, it at least requires that a prisoner make reasonable efforts to discover the facts supporting his claims. <u>See also</u> <u>Aron v. United States</u>, 291 F.3d 708, 712 (11th Cir. 2002) (". . . § 2255(4) does not require the maximum feasible diligence, but only 'due,' or reasonable, diligence . . ."). Considering these factors, Vincent has not met his burden of proving the exercise of due diligence or that he brought these claims at a time when they could have been so discovered.

Vincent and his counsel apparently discussed Barrett as a potential source of information before trial.[26] Vincent did not tell his counsel what Barrett would say, but his counsel decided, he was willing to try to locate Barrett, since Barrett and Vincent were arrested together.[27] Counsel and his investigator attempted to locate Barrett before trial at the only address available.[28] The investigator also made other inquiries and was

---

[26]St. Rec. Vol. 8 of 9, Hearing Transcript, pp. 4-6, 11/7/14.

[27]<u>Id</u>.

[28]<u>Id</u>.

12

not able to find any additional leads as to Barrett's whereabouts.[29]  These facts were known to Vincent at the time of trial and readily apparent when counsel did not call Barrett to testify.  Thus, the factual basis for Vincent to question counsel's efforts to locate Barrett was discoverable, if not known in fact to Vincent at trial, long before he met with Barrett at the Allen Correctional Center.

In addition, in the motion for new trial, Vincent's state post-conviction counsel conceded that no matter how hard trial counsel may have looked at the time, "he would have been unable to locate [Barrett]."[30]  Vincent made no further effort to locate Barrett at any other time before or after trial.  As his post-conviction counsel urged in state court, there were other avenues available, including questions to Barrett's counsel, checking the records of the juvenile facility or moving for leave to access information from Barrett's juvenile court records.[31]  The lack of any effort, reasonable or otherwise, demonstrates Vincent's total lack of diligence in locating Barrett.

Despite Vincent's apathy, Barrett found him by happenstance.  Vincent represented throughout the state post-conviction proceedings that soon after he was placed in the Allen Correctional Center, a man approached him, identified himself as Barrett and volunteered the information that was later preserved in the January 10, 2013,

---

[29]Id.

[30]St. Rec. Vol. 3 of 9, Motion for New Trial, 10/11/12 or 12/13/12.

[31]St. Rec. Vol. 8 of 9, Hearing Transcript, pp. 6-8, 10-11, 11/7/14.

affidavit.[32]  The record indicates, however, that Barrett interacted with Vincent well before January 10, 2013.  For example, the Barrett chance-meeting was referenced in the motion for new trial filed by Vincent's state post-conviction counsel on October 11, 2012.[33]  The record also reflects that Vincent was incarcerated in the Allen Correctional Center as early as March 30, 2010, as evidenced by the address on his first motion for production of documents to the state trial court.[34]  Accepting as true Vincent's contention that upon his arrival at Allen Correctional Center, he was approached by Barrett, Vincent knew of Barrett's contentions as early as, if not before, March 30, 2010.  He has unnecessarily delayed presentation of his claims and has failed to establish a reason for the court to accept an alternative trigger date for the AEDPA statute of limitations.

Vincent has presented no support for his contention that he could not have discovered with the exercise of due diligence the factual predicate for his claim of ineffective assistance of counsel before January 10, 2013.  For these reasons, Vincent's request for the court to accept the alternate trigger date for the AEDPA one-year filing period under Section 2244(d)(1)(D) cannot be accepted.

_____

[32]Id.

[33]Id.

[34]St. Rec. Vol. 3 of 9, Cover Letter, 3/30/10; Motion for Production of Documents, 4/12/10.  He also apparently spent time in the Allen Correctional Center prior to his trial.  He was sent a letter to that address on June 22, 2009, by the Orleans Parish Criminal District Court.  St. Rec. Vol. 4 of 9, Letter to Vincent, 6/22/09.

Under Section 2254(d)(1)(A), Vincent's conviction became final on September 15, 2011, which was ninety (90) days after the Louisiana Supreme Court completed review of his conviction following direct appeal. Applying Section 2244 literally, Vincent had one year from finality of his conviction, or until September 14, 2012, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Vincent has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case. The record does not demonstrate the type of

circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case. See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times

extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas

petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Vincent's conviction became final under federal law on September 15, 2011. The one-year AEDPA statute of limitations period began to run the next day, September 16, 2011, and did so without interruption for 365 days until September 14, 2012, when it expired. Vincent had no properly filed state court application for post-conviction relief or other collateral review pending in any state court during that time period. His federal petition was not timely filed within that one-year period.

Although not directly asserted as an excuse for the time-bar, Vincent relies on Crandon Barrett's affidavit as proof of his actual innocence not properly investigated by his trial counsel. As an alternative means to overcome the AEDPA statute of limitations, Vincent must rely on a claim of actual innocence that presents new, reliable evidence to "show that it is more likely than not that no reasonable juror would have convicted him

in the light of the new evidence." <u>McQuiggin</u>, 133 S. Ct. at 1935.  However, Vincent has

not established that Barrett's purported affidavit provides any new and <u>reliable</u> evidence

of his innocence.

At trial,[35] Vincent attempted to show that he was not the same man that was chased

from the delivery van by police.  The victim and every officer involved in the chase was

certain when identifying Vincent as the man they encountered, both at the scene and at

trial.  Vincent's clothing was recovered by police as he stripped and scattered it along the

path to his aunt's home.  Despite the evidence he presented that he was not involved, the

jury clearly found credible the State's evidence that Vincent was in fact the same man.

Vincent now presents only the self-serving information from his co-perpetrator, Barrett,

who pleaded guilty to the crime for which they were arrested and himself is a career

criminal.  Vincent has provided nothing other than Barrett's affidavit to establish that a

person named Matthew Roche exists, much less was involved in the crime for which he

was convicted.  As held by the state courts, the information in the affidavit is suspect and

fails to establish that Barrett would have been willing to testify in this manner if he had

been located before trial.

The actual innocence exception is met only when a petitioner presents "evidence

of innocence so strong that a court cannot have confidence in the outcome of the trial .

---

[35]The "habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'"  <u>House v. Bell</u>, 547 U.S. 518, 538 (2006).

. . ." Schlup v. Delo, 513 U.S. 298, 316 (1995); McQuiggin, 133 S. Ct. at 1936. Vincent has not presented that kind of new, reliable evidence that he is more likely than not innocent such that no reasonable juror would have found him guilty. See McQuiggin, 133 S. Ct. at 1935.

In considering this type of claim, "a federal habeas court . . . should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." As discussed above, Vincent unjustifiably delayed in presenting the Barrett information he discovered as early as or before March 2010. Vincent made no effort to pursue any information to establish his innocence after trial or after his lawyer was unable to locate Barrett before trial. This unjustifiable delay is a compelling factor in determining that he has not reliably shown his actual innocence to overcome the AEDPA statute of limitations.

Vincent offers one final reason for this court to excuse his failure timely to file his petition by citing without argument to the United States Supreme Court decision in Martinez v. Ryan, 566 U.S. 1 (2012). Martinez, however, is not relevant to the timeliness of this federal petition. In Martinez , the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino

v. Thaler, 133 S. Ct. 1911, 1912 (2013) (quoting Martinez, 566 U.S. at 18). In this case, Vincent's ineffective assistance of counsel claims were addressed on the merits by the state courts and were not subject to a procedural bar. Second, the Martinez and Trevino decisions do not address or provide an excuse for untimely filing of a federal habeas petition. See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation). Martinez and Trevino also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. See In re Paredes, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) (". . . the Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Neither Martinez nor Trevino provide equitable or statutory relief from Vincent's untimely filing under the AEDPA.

Under the mailbox rule, Vincent's federal petition is deemed filed on March 8, 2016, which was almost three and one-half years after the AEDPA's one-year statute of limitations expired on September 14, 2012. His federal petition was not timely filed and must be dismissed with prejudice for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Vincent's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[36]

New Orleans, Louisiana, this _____14th_____ day of August, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[36]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.